**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------X
RAYMOND E. GOSSELIN,

Plaintiff,

- against -

SHEET METAL WORKERS' NATIONAL
PENSION FUND,
Defendant.
---------------------------------------------------------X

**MEMORANDUM**
**AND ORDER**

CV 16-4391 (ADS) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

### I.     PRELIMINARY STATEMENT

Plaintiff Raymond E. Gosselin ("Plaintiff") brings this declaratory judgment action against Defendant Sheet Metal Workers' National Pension Fund (the "Fund" or "Defendant"), pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, seeking, *inter alia*, an award of the entire amount of the pension benefits he claims is due and payable from the Fund. *See generally* Amended Complaint ("Am. Compl.") [DE 13]. Plaintiff alleges that the Fund's decision to deny his claim for pension benefits was arbitrary and capricious. *See id.* ¶¶ 50, 57.

Presently before the Court is Plaintiff's motion seeking certain discovery beyond the administrative record. *See* Plaintiff's Letter Motion ("Pl.'s Mot.") [DE 19]. Specifically, Plaintiff seeks an Order permitting him to "take the deposition of at least the plan administrator . . . and to engage in written discovery." *Id.* at 4. The Fund opposes the motion. *See generally* Defendant's Opposition ("Def.'s Opp'n") [DE 20]. For the reasons set forth in this Memorandum and Order, Plaintiff's motion is DENIED.

## II.  FACTUAL BACKGROUND

The following facts are taken primarily from Plaintiff's Amended Complaint, the parties'
motion papers and documents attached to those submissions.  All facts alleged are assumed to be
true for purposes of this motion.

Plaintiff began working in the sheet metal fabrication industry in 1978 upon accepting an
apprenticeship with Triple S Sheet Metal.  Am. Compl. ¶ 7.  At the time Plaintiff began his
apprenticeship, "Triple S Sheet Metal was a signatory to a contract with the Sheet Metal
Workers' Local Union 55, of whom Plaintiff was a member.  By the end of his apprenticeship,
Triple S Sheet Metal was a [ ] signatory to a contract with the Sheet Metal Workers' Local Union
28 ('Local 28'), of whom Plaintiff was and still is a member."  *Id*. ¶ 8.  From 1978 through 1982
— the term of Plaintiff's apprenticeship — he "began accruing pension service credit. . . ."  *Id*.
¶ 9.  Following the conclusion of the apprenticeship, Plaintiff continued to work for Triple S
Sheet Metal as a "Sheet Metal Worker" and his duties consisted of ductwork fabrication.  *Id*.
¶ 10.  Thereafter, in 1983, Plaintiff was promoted to the position of "Shop Foreman" which, in
addition to his fabrication duties, required him to supervise other sheet metal workers, maintain
the equipment and hire and terminate employees.  *Id*. ¶ 11.

In 1996, Triple S Sheet Metal was sold and subsequently became known as Triple S Air
Systems, Inc. ("Triple S").  *Id*. ¶ 12.  Notwithstanding this change in ownership, "Triple S
continued to be a signatory to a contract with Local 28."  *Id*. ¶ 12.  Despite his employment with
Triple S, "[f]rom 2001 through 2010, Plaintiff received holiday bonuses and travel
reimbursement from Triple S on a separate payroll through J&S Fabricators, Inc. ('J&S'), a
separate and distinct company from Triple S."  *Id*. ¶ 13.  According to Plaintiff, the decision to
issue these bonus and reimbursement payments to Plaintiff from J&S as opposed to Triple S was
unilaterally made by "the former president of J&S, Steven Benkovsky."  *Id*. ¶ 15.  Plaintiff did

not have knowledge as to the ownership structure or purposes of J&S and did not have any control over the ultimate determination concerning which account (*i.e.*, Triple S or J&S) these payments originated from. *Id.* ¶ 15. Plaintiff asserts that although he received bonus payments and reimbursements from J&S, he "did not perform even one second of work for J&S" and that he "exclusively worked for Triple S and no other employers." *Id.* ¶¶ 16-17. Further, although Triple S "remained a signatory to a collective bargaining agreement with Local 28 . . . J&S was not and has never been a signatory to a collective bargaining agreement with Local 28." *Id.* ¶¶ 18-19.

In late 2014 — shortly before he reached his 55th birthday — Plaintiff contemplated retirement due in part to the fact that "the Fund provides a 55/30 Pension (set forth in Section 5.09 of the Fund's Plan), which in essence, allows participants to obtain unreduced pension benefits if they are fifty-five (55) years old and have obtained thirty (30) years of service credit." *Id.* ¶¶ 20-21. Significantly, "[u]nlike participants of the Fund, participants of the SMWIA Local 28 Pension Fund are not entitled to unreduced pension benefits from the SMWIA Local 28 Pension Fund if they retire prior to age sixty-five (65) and have thirty (30) years of service credit. However, they are entitled to reduced pension benefits from the SMWIA[1] Local 28 Pension Fund at age fifty-five (55)." *Id.* ¶ 23. As such, Plaintiff opted to apply for pension benefits from both plans since "under the Fund, Plaintiff was entitled to receive full pension benefits." *Id.* ¶ 24.

On December 17, 2014, Plaintiff was notified by the SMWIA Local 28 Pension Fund that his application for reduced pension benefits was granted; however, as of January 2015, Plaintiff had not received any response from the Fund as to his application for full pension benefits in

---

[1]    The acronym "SMWIA" stands for Sheet Metal Workers International Association.

accordance with Section 5.09 of the Fund's Plan. *Id.* ¶¶ 21, 23. As a result, Plaintiff advised the

SMWIA Local 28 Pension Fund and the Fund that he wished to postpone his retirement date of

January 31, 2015 until further notice, and he continued to work for Triple S and continues to do

so to this day." *Id.* ¶ 24.

Subsequently, on March 24, 2015, the Fund advised Plaintiff that based upon the Social

Security Administration's ("SSA") records, which reflected that Plaintiff had, in fact, worked for

J&S from 2001 through 2010, the Fund would require Plaintiff to provide a description of the

services provided by J&S, Plaintiff's title, job description, and whether it had any union

affiliation" in order to "determine Plaintiff's eligibility for the 55/30 pension." *Id.* ¶ 28. In

response, Plaintiff stated that he had "no job description or job title from J&S and that he

received money from J&S only as bonuses for work done at Triple S." *Id.* ¶ 29. In addition,

Plaintiff provided the Fund's correspondence to Benkovsky who, in turn, drafted a letter to the

Fund setting forth that J&S did not "perform any work under a collective bargaining agreement"

nor did it engage in sheet metal work or any other services "relating to handling, manufacturing,

fabrication, installation, dismantlement, balancing and testing, alteration, repair, or servicing of

any sheet metal or substitute product." *Id.* ¶ 30. In addition, Benkovsky stated that J&S ceased

activities in 2010, filed its final corporate income tax for 2014, and [wa]s expected to dissolve by

April 30, 2015." *Id.*

Despite the provision of this additional information, "the Fund denied Plaintiff's

application for the 55/30 Pension" on June 5, 2015 because it determined that "Plaintiff must

have worked for J&S since the SSA indicated that Plaintiff received earnings from J&S" during

the applicable time period. In the Fund's view, J&S did perform work in the "Sheet Metal

Industry" since (1) it was "still an active employer" and (2) "the name [ ] lends itself to be a company that works in the assembly and fabrication of products. *Id.* ¶¶ 31-33.

Following the Fund's denial of his application for pension benefits, "Plaintiff requested an appeal of the Fund's decision" on November 3, 2015. *Id.* ¶ 36. In support of his appeal, Plaintiff submitted written correspondence which stressed that "the money that was paid to him by Triple S through J&S were for bonuses, not for work performed for J&S" and that in any event he had "no idea at the time why Triple S used another company to pay him his bonuses and that he should not be penalized for something that he had no control over." *Id.* ¶ 37. On December 19, 2015, the Appeals Committee denied Plaintiff's appeal. *Id.* ¶ 38; *see* Def.'s Opp'n, Exhibit ("Ex.") A (December 19, 2015 Denial Letter).

Thereafter, Plaintiff retained counsel and on March 7, 2016, Plaintiff (through counsel) sent a letter to the Fund's "Pension Specialist" and requested that the Fund permit a ninety (90) day extension to supplement Plaintiff's appeal to ensure Plaintiff is provided with a full and fair review." *Id.* ¶ 40. In support of this request, Plaintiff's counsel provided the Fund with additional documentation. *Id.* ¶¶ 41-42. In response, the Fund reiterated that it understood Plaintiff's position but that "its decision was based on the fact that official filings with the SSA indicate that Plaintiff was paid by J&S (a non-signatory company in the Sheet Metal Industry) for employment." *Id.* ¶ 43.

Nevertheless, according to Plaintiff, the Fund, through counsel, indicated that Plaintiff could still provide evidence that Plaintiff was not an employee of a non-signatory company in the Sheet Metal Industry." *Id.* ¶ 44. As such, Benkovsky provided a sworn affidavit to Plaintiff's counsel which attempted to clarify certain information contained in his earlier letter." *Id.* ¶ 45. On May 16, 2016, Plaintiff's counsel sent Benkovsky's affidavit to the Fund and

requested reconsideration of the denial of his application for a 55/30 Pension. . . ." *Id.* ¶ 46.
Despite the provision of this additional information "the Fund upheld the denial of Plaintiff's application." *Id.* ¶ 47.

## III.  PLAINTIFF'S MOTION

### A.  Applicable Law

"ERISA does not set out the applicable standard of review for actions challenging benefit eligibility determinations." *Fay v. Oxford Health Plan*, 287 F.3d 96, 103 (2d Cir. 2002) (quoting *Zuckerbrod v. Phoenix Mut. Life Ins. Co.*, 78 F.3d 46, 49 (2d Cir.1996)) (quotation marks omitted). However, the Supreme Court has held that "a denial of benefits challenged under [ERISA] § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *see Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 738 (2d Cir. 2001) ("[W]here a plan does confer discretion upon the administrator to determine eligibility or interpret the terms of the plan, the determinations of the administrator are reviewed under an abuse of discretion standard."). "When such discretionary authority is reserved, a court 'will not disturb the administrator's ultimate conclusion unless it is arbitrary and capricious.'" *S.M. v. Oxford Health Plans (N.Y.), Inc.* ("*S.M. II*"), 94 F. Supp. 3d 481, 497 (S.D.N.Y. 2015) *aff'd sub nom. S.M. v. Oxford Health Plans (N.Y.)*, 644 F. App'x 81 (2d Cir. 2016), *cert. denied sub nom. S.M. v. Oxford Health Plans (NY), Inc.*, 137 S. Ct. 148, 196 L. Ed. 2d 45 (2016) (quoting *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 82 (2d Cir. 2009)) (internal quotation marks omitted); *see Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995)). "The plan administrator bears

the burden of proving that the deferential standard of review applies." *Fay*, 287 F.3d at 103; *see Nichols v. Prudential Ins. Co. of Am.*, 406 F.3d 98, 109 (2d Cir. 2005)).

In an ERISA case applying the arbitrary and capricious standard, "the presumption is that review is limited to the record in front of the claims administrator unless the district court finds good cause to consider additional evidence." *Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 125 (2d Cir. 2003); *see Krauss v. Oxford Health Plans, Inc.*, 517 F.3d 614, 631 (2d Cir. 2008) ("We have repeatedly said that a district court's decision to admit evidence outside the administrative record is discretionary, 'but which discretion ought not to be exercised in the absence of good cause.'") (quoting *Juliano v. Health Maint. Org. of New Jersey, Inc.*, 221 F.3d 279, 289 (2d Cir. 2000)); *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995). "[T]he reasonableness of the administrator's decision [to deny benefits] is not an issue that courts will permit evidence beyond the administrative record." *Paris-Absalom v. Aetna Life Ins. Co.*, No. 11-CV-0610, 2012 WL 4086744, at *2 (E.D.N.Y. Sept. 17, 2012) (citing, *e.g.*, *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 174 (2d Cir. 2001)). However, courts are not necessarily confined to the administrative record when determining whether an administrator's decision was affected by a conflict of interest, "an issue[] which is distinct from the reasonableness of the plan administrator's decision [to deny benefits]." *Zervos*, 252 F.3d at 174 (citing *Firestone*, 489 U.S. at 115 ("if a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor in determining whether there is an abuse of discretion") (internal quotation marks and brackets omitted)); *accord McCarthy-O'Keefe v. Local 298/851 IBT Employer Grp. Pension Trust Fund*, No. 13-CV-4785, 2015 WL 783352, at *6 (S.D.N.Y. Feb. 24, 2015); *see Trussel v. Cigna Life Ins. Co. of N.Y.*, 552 F. Supp. 2d 387, 390 (S.D.N.Y. 2008) (collecting cases).

A plan administrator is considered conflicted when that administrator "both evaluates claims for benefits and pays benefits claims." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). Such a conflict is known as a "structural conflict of interest." *See, .e.g.*, *Hobson v. Metro. Life Ins. Co.*, 574 F.3d 75, 83 (2d Cir. 2009). The Supreme Court has stated that courts should consider a structural conflict of interest as "a factor in determining whether the plan administrator has abused its discretion in denying benefits[,] and that the significance of the factor will depend upon the circumstances of the particular case." *Glenn*, 554 U.S. at 108 (citing *Firestone*, 489 U.S. at 115). Thus, the fact that a plan administrator is structurally conflicted "does not change the court's deferential standard of review but must be weighed as a factor in determining whether there was an abuse of discretion." *Puri v. Hartford Life & Acc. Ins. Co.*, 784 F. Supp. 2d 103, 105 (D. Conn. 2011) (citing *McCauley v. First Unum Life Ins. Co.*, 551 F.3d 126, 133 (2d Cir. 2008)).

It is well established in the Second Circuit that a structural conflict of interest does not *per se* constitute good cause to consider additional evidence outside of the administrative record. *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 294–96 (2d Cir. 2004) (clarifying holding in *DeFelice v. Am. Int'l Life Assurance Co. of N.Y.*, 112 F.3d 61 (2d Cir. 1997) and stating: "We hold that a conflicted administrator does not *per se* constitute good cause, and caution district courts that a finding of a conflicted administrator alone should not be translated *necessarily* into a finding of good cause.") (emphasis in original); *accord S.M. II*, 94 F. Supp. 3d at 506 ("'Although a Defendant's demonstrated conflict of interest may be an example of good cause, a conflicted administrator does not *per se* constitute good cause.'") (quoting *Wedge v. Shawmut Design & Const. Grp. Long Term Disability Ins. Plan*, 23 F. Supp. 3d 320, 337 (S.D.N.Y. 2014)) (alteration omitted); *Durham v. Prudential Ins. Co. of Am.*, 890 F. Supp. 2d 390, 396 (S.D.N.Y.

2012).  As the Second Circuit explained in *Locher*, such "a *per se* rule would effectively

eliminate the 'good cause' requirement and the discretion afforded to district courts in deciding

whether to admit additional evidence, because claims reviewers and payors are almost always

either the same entity or financially connected in some other way."  389 F.3d at 295 (citations

omitted); *see also S.M. II*, 94 F. Supp. 3d at 506 (noting that, in effect, a *per se* rule "would

'undermine the significant ERISA policy interests of minimizing costs of claim disputes and

ensuring prompt claims-resolution procedures.'") (quoting *Locher*, 94 F. Supp. 3d at 506).

  However, a structural conflict of interest "can rise to the level of 'good cause' when

bolstered by specific allegations."  *Durham*, 890 F. Supp. 2d at 396 (quoting *Biomed Pharm.,

Inc. v. Oxford Health Plans (N.Y.), Inc.*, 831 F. Supp. 2d 651, 658 (S.D.N.Y. 2011)); *accord*

*Puri*, 784 F. Supp. 2d at 106; *see also S.M. II*, 94 F. Supp. 3d at 506 ("Typically, district courts

'have emphasized a plaintiff's burden to allege facts, with sufficient specificity, that would

support the existence of good cause permitting the admission of additional evidence beyond the

administrative record.'") (quoting *Krizek v. Cigna Grp. Ins.*, 345 F.3d 91, 98 n. 2 (2d Cir. 2003))

(internal quotation marks omitted).  For example, "the Second Circuit has determined that 'good

cause' exists when the procedures employed in arriving at the claim determination were flawed,

and when an insurer's claimed reason for denying a claim was not stated in its notices to the

claimant."  *Biomed Pharm.*, 831 F. Supp. 2d at 658-59 (quoting *Locher*, 389 F.3d at 295); *accord*

*S.M. II*, 94 F. Supp. 3d at 506.  Ultimately, "the decision to consider information outside the

administrative record is a discretionary one even where there is 'good cause.'"  *Locher*, 389 F.3d

at 295 (quoting *Critchlow v. First Unum Life Ins. Co. of Am.*, 340 F.3d 130, 133 n. 2 (2d Cir.

2003), *withdrawn and vacated on reconsideration on other grounds*, 378 F.3d 246 (2d Cir.

2004)).

Where a plaintiff contends that a benefits determination was tainted by the plan administrator's conflict of interest, "'[i]t logically follows that some amount of discovery is necessary, to enable the Court to determine the extent and nature of the conflict and the appropriate weight to give this conflict in the ultimate merits analysis,' *i.e.*, to enable the Court to determine whether [administrator's] conflict of interest affected the reasonableness of the administrator's benefits decision." *Murphy v. First Unum Life Ins. Co.*, No. 15-CV-820, 2016 WL 526243, at *5 (E.D.N.Y. Feb. 9, 2016) (quoting *Tretola v. First Unum Line Ins. Co.*, No. 13-CV-231, 2013 WL 2896804, at *3 (S.D.N.Y. June 13, 2013)) (internal alteration omitted); *see also Wagner v. First Unum Life Ins. Co.*, 100 F. App'x 862, 864 (2d Cir. 2004) (summary order) ("[D]iscovery may be appropriate in some cases where a petitioner seeks to show a conflict of interest[.]"). Thus, courts may permit extra-record discovery "relating to [a] conflict, since much of the relevant information would not have been part of the administrative record, but not discovery into the substantive merits of the claim." *Murphy*, 2016 WL 526243, at *5 (quoting *Schrom v. Guardian Life Ins. Co.*, No. 11-CV-1680, 2012 WL 28138, at *4 (S.D.N.Y. Jan. 5, 2012)) (internal quotation marks and alteration omitted) (citing *Tretola*, 2013 WL 2896804, at *2-3 (agreeing with *Schrom*'s analysis)); s*ee McDonnell v. First Unum Life Ins. Co.*, No. 10-CV-08140, 2011 WL 5301588, at *5 (S.D.N.Y. Nov. 3, 2011) ("A plaintiff is entitled to seek discovery through depositions in order to determine information 'relevant to the issue of whether the plan administrator had a conflict of interest when it terminated plaintiff's benefits.'") (quoting *Sheehan v. Metropolitan Life Ins. Co.*, No. 01-CV-9182, 2002 WL 1424592, *6 (S.D.N.Y. June, 28 2002)). "If discovery is allowed, the plaintiff can then apply to the district judge for a determination as to whether she will expand the record to include information that discovery yielded, the nature of which is not yet known." *Burgio v. Prudential Life Ins. Co. of Am.*, 253

F.R.D. 219, 229 (E.D.N.Y. 2008). "Thus, even if discovery outside the administrative record is permitted, a plaintiff must then make a showing of good cause before the district court may consider the information obtained via discovery in reviewing a plan administrator's benefits determination." *Pretty v. Prudential Ins. Co. of Am.*, 696 F. Supp. 2d 170, 182 (D. Conn. 2010).

Significantly, "the decision as to whether to allow discovery is distinct from the decision as to whether to allow consideration of additional evidence." *Burgio*, 253 F.R.D. at 229; *accord Schrom*, 2012 WL 28138, at *3. As such, where a plaintiff seeks to obtain through discovery evidence outside of the administrative record, the plaintiff "need not make a full good cause showing, but must show a reasonable chance that the requested discovery will satisfy the good cause requirement." *Rubino*, 2009 WL 910747, at *4 (quoting *Trussel*, 552 F. Supp. 2d at 390) (internal quotation marks and citations omitted); *Durham*, 890 F. Supp. 2d at 397 (collecting cases); *Burgio*, 253 F.R.D. at 230–31 (same); *see also Schrom*, 2012 WL 28138, at *3 ("[D]iscovery is only permitted where it is reasonably likely that the requested information will satisfy the good cause requirement."). As noted by this Court in an earlier decision, "[i]f a plaintiff were forced to make a full good cause showing just to obtain discovery, then he would be faced with a vicious circle: To obtain discovery, he would need to make a showing that, in many cases, could be satisfied only with the help of discovery." *Rubino*, 2009 WL 910747, at *4 (quoting *Anderson v. Sotheby's Inc. Severance Plan*, No. 04 Civ. 8180 (S.D.N.Y. May 31, 2005)). "The good cause standard required to obtain evidence beyond the administrative record through discovery is therefore less stringent than when requesting that the court consider such evidence in its final determination." *Burgio*, 253 F.R.D. at 230 (quoting *Trussel*, 552 F. Supp. 2d at 390–91) (internal alterations omitted); *see Schrom*, 2012 WL 28138, at *3.

However, where a plaintiff contends that the plan administrator had a conflict of interest, he or she cannot obtain discovery outside of the administrative record "merely by making conclusory allegations." *Laakso v. Xerox Corp.*, No. 08-CV-6376, 2011 WL 3360033, at *4 (W.D.N.Y. Aug. 3, 2011) (citing quoting *Baird v. Prudential Ins. Co. of Am.*, No. 09-CV-7898, 2010 WL 3743839, at *9 (S.D.N.Y. Sept. 24, 2010) *aff'd*, 458 F. App'x 39 (2d Cir. 2012)). "Instead, the plaintiff must make 'specific factual allegations' to support the discovery request." *Id.* (quoting *Quinones v. First Unum Life Insur. Co.*, No. 10-CV-8444, 2011 WL 797456 at *2 (S.D.N.Y. Mar.4, 2011)); *see S.M. v. Oxford Health Plans (NY), Inc.* (*S.M. I*), No. 12-CV-4679, 2014 WL 1303444, at *4 (S.D.N.Y. Apr. 1, 2014) ("The plaintiff must . . . provide case-specific allegations tending to show a conflict of interest.").

To that end, it is well-settled that "the party seeking additional discovery must do more than merely claim that 'it is needed to determine whether she received a 'full and fair review.'" *Hamill v. Prudential Ins. Co. of Am.*, No. 11-CV-1464, 2012 WL 6757211, at *10 (E.D.N.Y. Sept. 28, 2012) *report and recommendation adopted*, 2013 WL 27548 (E.D.N.Y. Jan. 2, 2013) (quoting *Burgio*, 253 F.R.D. at 232). Moreover, a structural conflict of interest is not sufficient by itself to permit extra-record discovery and "a party seeking to conduct discovery outside the administrative record must allege more than a mere conflict of interest." *Rubino*, 2009 WL 910747, at *4; *see, e.g.*, *Paris-Absalom*, 2012 WL 4086744, at *2 ("'It is well-established that a conflict of interest does not *per se* constitute good cause for discovery of evidence outside of the administrative record, and while a full good cause showing is not required to obtain discovery, a party seeking to conduct discovery outside the administrative record must allege more than a mere conflict of interest.'") (quoting *Baird*, 2010 WL 3743839 at *9 (internal quotation marks omitted)); *Boison v. Ins. Servs. Office, Inc.*, 829 F. Supp. 2d 151, 160-61 (E.D.N.Y. 2011)

("Boison has merely alleged the structural conflict of interest that obviously exists and is acknowledged by the Defendant. This allegation alone would be insufficient for this Court to grant additional discovery."); *Varney v. NYNEX Mgmt. Pension Plan*, No. CV 07-695, 2011 WL 6934773, at *5 (E.D.N.Y. Dec. 30, 2011) ("The fact that Verizon is both the plan administrator and plan sponsor is not alone sufficient to warrant discovery outside the administrative record."); *Pretty*, 696 F. Supp. 2d at 182 ("The mere appearance of a conflict alone is insufficient to meet the reasonable chance standard.").

"To satisfy the requirement that plaintiff shows a reasonable chance that the requested discovery will satisfy the good cause requirement, a variety of assertions have been deemed sufficient." *Hamill*, 2012 WL 6757211, at *10 (internal quotation marks omitted). For example, "[t]hat standard may be met where the Plaintiff demonstrates a conflict of interest 'as well as some additional factor, such as lack of established criteria for determining an appeal, a practice of destroying or discarding all records within minutes after hearing an appeal, or a failure to maintain written procedures for claim review.'" *Andrews v. Realogy Corp. Severance Pay Plan for Officers*, No. 13-CV-8210, 2015 WL 736117, at *8 n. 8 (S.D.N.Y. Feb. 20, 2015) (quoting *Pretty*, 696 F. Supp. 2d at 183); *see Boison*, 829 F. Supp. 2d at 160 (quoting *Locher*, 389 F.3d at 293). "Expanded discovery may also be permitted to test the adequacy of the administrative record." *Gill v. Bausch & Lomb Supplemental Ret. Income Plan I*, No. 09-CV-6043, 2011 WL 2413411, at *5 (W.D.N.Y. June 10, 2011) (citing *Nagele v. Elec. Data Sys. Corp.*, 193 F.R.D. 94, 105 (W.D.N.Y. 2000)).

Moreover, plausible allegations of "procedural irregularities" in the administrative review process, considered in conjunction with a structural conflict of interest, may be sufficient to show that a plaintiff has a reasonable chance of success in meeting the good cause standard. *S.M. I*,

2014 WL 1303444, at *4 (additional discovery warranted where the plaintiff alleged that the insurer's "non-specialist Medical Director" did not consider particular medication the plaintiff was taking or an accompanying authorization report); *Varney*, 2011 WL 6934773, at *5 (discovery outside administrative record warranted where "procedural irregularities" existed, such as the insurer's "unexplained reversal of its initial decision that Plaintiff was eligible for benefits," email correspondence showing the insurer "may have improperly pressured [an employee] to reverse its decision regarding Plaintiff's claim, and the insurer's refusal to provide the plaintiff with a claim form when he requested one in 2006); *Garban v. Cigna Life Ins. Co. of New York*, No. 10-CV-5770, 2011 WL 3586070, at *3 (S.D.N.Y. Aug. 11, 2011) ("Discovery is permitted so that plaintiffs may uncover these procedural irregularities."); *Burgio*, 253 F.R.D. at 232 (additional discovery warranted where the plaintiff asserted "that his eligibility for LTD benefits was tied to his eligibility for other monetary benefits" and he "posited numerous specific reasons he believes that he is entitled to discovery, including allegedly inappropriate correspondence between Defendant and the medical providers who determined Plaintiff's eligibility for LTD benefits"); *but see Yasinoski v. Connecticut Gen. Life Ins. Co.*, No. 07-CV-2573, 2009 WL 3254929, at *11 (E.D.N.Y. Sept. 30, 2009) (denying additional discovery where "the excerpts from the administrative record presented . . . do not reflect the material discrepancies alleged by Plaintiff" and the plaintiff failed to "provide[] specific examples from the administrative record showing that Prudential exerted improper influence over Plaintiff's treating physician or other reviewing doctors resulting from, for example, prior relationships between Prudential and the doctors or questionable incentive structures"); *Baird*, 2010 WL 3743839, at *7 (denying additional discovery where the plaintiff did not "suggest that Defendant's conflict actually affected its benefit determination" and noting that the plaintiff

"cannot avoid summary judgment through conclusory assertions that discovery *might* reveal some infirmity in Defendant's decision-making.").

Ultimately, the plaintiff "must show that the specific items of discovery he seeks have a reasonable chance of helping him meet [the good cause] requirement." *Garban*, 2011 WL 3586070, at *3; *see, e.g.*, *Liyan He v. Cigna Life Ins. Co. of New York*, 304 F.R.D. 186, 189 (S.D.N.Y. 2015) (limiting discovery to "a single deposition of a Cigna employee as to the procedural administration of plaintiff's claim and . . . the examination of the written evaluations of some key employees involved in the decisionmaking on plaintiff's claim," and noting that "the goal of this discovery will be only to determine whether there are conflicts or procedural irregularities that bear on the question of whether the existing administrative record is incomplete"); *McDonnell*, 2011 WL 5301588, at *5 (permitting the plaintiff to take two depositions but limiting the scope of those depositions "to ascertaining facts relating to the issue of whether the bases for their determinations were affected by a conflict of interest, as this information is unlikely to be found in the administrative record").

With these principles in mind, the Court turns its attention to the distinct facts and circumstances of this case.

## B. Application to the Facts

### 1. Preliminary Matters

Defendant asserts "Plaintiff does not dispute that the applicable [standard] of review in this case is the deferential arbitrary and capricious standard . . . which is presumed to be limited to the record in front of the Appeals Committee." Def.'s Opp'n at 1. It is true Plaintiff appears to acknowledge that the arbitrary and capricious standard of review is applicable to this case. He states that "[t]he Court's review in ERISA cases applying the arbitrary and capricious standard of

review is presumed to be limited to the record in front of the claims administrator." Pl.'s Mot. at 3. In an abundance of caution, and because this issue has not been properly briefed by either party, the Court declines to make such a finding. In any event, the Court need not, at this stage, determine the applicable standard of review since "it is unnecessary to determine the standard of review before deciding on the scope of discovery." *Aitken v. Aetna Life Ins. Co.*, No. 16 CIV 4606, 2017 WL 455547, at *2 n. 2 (S.D.N.Y. Jan. 19, 2017) (citing *Shelton v. Prudential Insurance Co. of America*, No. 16 Civ. 1559, 2016 WL 3198312, at *2 (S.D.N.Y. June 8, 2016)); *Trussel v. Cigna Life Insurance Co.*, 552 F. Supp. 2d 387, 391 (S.D.N.Y. 2008)); *see also Kostas v. Prudential Ins. Co. of Am.*, No. 16-CV-1033, 2016 WL 5957306, at *1 (S.D.N.Y. Oct. 13, 2016) ("I need not resolve the question of what standard of review should apply [since] [t]he standard of review, the admissibility of evidence outside of the administrative record, and the scope of discovery are three separate issues, and the Court need not decide the first two in order to decide the last.") (internal citation omitted). As such, the Court turns to the discovery-related issues presented by Plaintiff's motion.

### 2. Whether Plaintiff Should be Permitted Discovery Beyond the Administrative Record Based Upon The Fund's Purported "Conflict of Interest"

Plaintiff's initial argument in support of obtaining additional discovery beyond the administrative record is that "there is a conflict of interest in that the Fund both decides and pays claims for benefits, and thus, has an [*sic*] motivation to deny claims." Pl.'s Mot. at 4. In addition, according to Plaintiff, this structural conflict is "heightened by the fact that the Fund was in critical status as recently as three years ago, and is currently in endangered status." *Id*. From this, Plaintiff surmises, "the Fund's decision-making process was flawed and affected by the conflict," apparently because the Fund "only considered Plaintiff's Social Security earning statements and did not do any additional investigation" — even after Plaintiff provided the Fund

with additional information that he "did not actually perform work for a non-signatory employer." *Id.* Based upon these assertions, Plaintiff seeks "discovery into the existence and effect of a conflict of interest based upon the fact that the Fund both pays and determines benefits as well as whether the Fund's funding status has affected its benefit determinations." *Id.* at 5.

In response, Defendant initially points out that it has already agreed to provide Plaintiff with both the "official meeting minutes of the Appeals Committee, including the minutes of Plaintiff's appeal" as well as "a copy of the December 19, 2015 letter informing Plaintiff that his appeal was denied, which is appended to the official minutes. . . ." Def.'s Opp'n at 3. Defendant avers that these documents, which show that the Management Trustee, Ronald Palmerick "recused himself from [hearing] Plaintiff's appeal, which left the decision solely with [the] [L]abor Trustee," illustrates the lack of a structural conflict since "the appeal did not involve a decision being made by the same person who also pays the benefits." *Id.* As such, according to Defendant, this "obviates the need for additional discovery relating to the alleged existence of a conflict. . . ." *Id.* Specifically, Defendant states that "[t]he minutes and the denial letter enable Plaintiff to determine the extent to which information was considered and the weight attached to such information" and that the "minutes of other appeals enable Plaintiff to determine whether there were any differences or inconsistencies in the way in which the Appeals committee interpreted the term Sheet Metal Industry . . . and whether there were any differences after the Fund entered Critical Status." *Id.* at 4.

Even assuming that a structural conflict did exist, Defendant argues that "it would not *per se* constitute grounds for permitting Plaintiff to conduct discovery outside the Administrative Record (citing this Court's decision in *Feltington v. Hartford Life Ins. Co.*, No. 14 CV 6616,

2016 WL 1056568, at *9 (E.D.N.Y. Mar. 15, 2016)).  Specifically, Defendant maintains that "Plaintiff has failed to allege anything from the record that creates even a suggestion that the alleged structural conflict played any role in the Appeals Committee's decision."  Def.'s Opp'n at 3.  Significantly, Defendant points out that although Plaintiff asserts the Fund "'only considered Plaintiff's Social Security earning statements and did not do any additional investigation,'" such an assertion is "belied by the December 19, 2015 letter" as well as the fact that "the Appeals Committee did in fact conduct further investigation in the operations of J & S Fabricators, and concluded from its investigation that the earnings [Plaintiff] reported to the SSA reflected earned income as an employee of J & S Fabricators, that his employment with J & S Fabricators was not covered by a collective bargaining agreement, and that there was no Explanation as to why a bonus check would be issued by J & S to an employee of anther company."  *Id*. at 4.  As such, Defendant states that the Appeals Committee's decision was made pursuant to "the facts of the record, coupled with its own independent investigation, and not any real or perceived conflict of interest."  *Id.*

As an initial matter, although Defendant seems to assert that no structural conflict existed in light of the fact that the Management Trustee recused himself from the appeal proceedings, Defendant cites no case law in support of this specific proposition.  Thus, the Court declines to consider the argument since, in general, "[a] plan administrator is considered conflicted when it both evaluates and pays benefits claims."  *S.M. I*, 2014 WL 1303444, at *4.  In this context, the term "administrator" is not generally equated with the individual(s) deciding the claim but rather refers to a structural conflict which may exist at the corporate level.  *See, e.g.*, *Durakovic v. Bldg. Serv. 32 BJ Pension Fund*, 609 F.3d 133, 138 (2d Cir. 2010) (recognizing that "[e]mployer-administrators have a categorical conflict" and that the "dual-role conflict may arise with other

administrators as well, such as insurer-administrators. . . ."); *Wedge v. Shawmut Design & Const. Grp. Long Term Disability Ins. Plan*, 23 F. Supp. 3d 320, 335 (S.D.N.Y. 2014) ("Defendants admit that [Reliance Standard Life Insurance Company] performs the dual role of insurer and decision maker, and that this 'structural conflict' is a factor to be considered under the arbitrary and capricious standard."); *Rozek v. N.Y. Blood Ctr.*, 925 F. Supp. 2d 315, 340 (E.D.N.Y. 2013) ("the Court is satisfied that First Unum [Life Insurance Company] was not influenced by a conflict of interest"). Thus, Defendant's assertion that no structural conflict existed solely because the Management Trustee recused himself from the appeals process is inapposite since it is the *entity* — in this case the Fund itself — and *not the individual* that is considered the "administrator" for purposes of evaluating and paying pension benefits claims. In other words, it matters not which Trustees (or other individuals) were involved with the decision-making process since any conflict *vel non* exists at the corporate level. *See, e.g.*, *Daniel v. UnumProvident Corp.*, CV–04–1073, 2010 WL 8292157, at *15, (E.D.N.Y. Oct. 27, 2010) ("Although many courts, including the Second Circuit, have recognized that UnumProvident and/or its subsidiaries (collectively "Unum"), including UNUM Life, has a history of biased claims administration ... the conflict of interest evidenced from that history is offset, in part, by the active steps UNUM Life took to promote accuracy in its claims management process.").

However, even proceeding from the premise that a structural conflict does exist here, such a conflict, in itself, is insufficient to permit extra-record discovery and "a party seeking to conduct discovery outside the administrative record must allege more than a mere conflict of interest." *Rubino*, 2009 WL 910747, at *4; *see, e.g.*, *Paris-Absalom*, 2012 WL 4086744, at *2 ("'It is well-established that a conflict of interest does not *per se* constitute good cause for discovery of evidence outside of the administrative record, and while a full good cause showing

is not required to obtain discovery, a party seeking to conduct discovery outside the administrative record must allege more than a mere conflict of interest.'") (quoting *Baird*, 2010 WL 3743839 at *9 (internal quotation marks omitted)); *Boison*, 829 F. Supp. 2d at 160-61; *Varney*, 2011 WL 6934773, at *5.  Consequently, although Plaintiff asserts that a structural conflict exists because "the Fund both decides and pays claims for benefits . . . [and therefore] it has an [*sic*] motivation to deny claims," Pl.'s Mot. at 4, this assertion, in itself, is inadequate to open the doors of discovery beyond the administrative record.  *See Shelton*, 2016 WL 3198312, at *3 ("To obtain discovery outside the administrative record, however, a plaintiff must do more than make conclusory allegations, claim discovery is needed to determine whether he or she received a fair review, *or allege a structural conflict of interest*.") (emphasis added).

In an attempt to cure this shortcoming, Plaintiff asserts that it is not solely the structural conflict itself but rather that the conflict is "heightened by the fact that the Fund was in critical status as recently as three years ago, and is currently in endangered status" and that these funding problems "provide[ ] additional motivation to deny claims to conserve Fund assets."  Pl.'s Mot. at 4.  In this regard, the Court points out that other than making these conclusory assertions, neither the Amended Complaint nor the instant motion contain any particularized facts which would provide a modicum of support for such a theory.  Indeed, a review of the Amended Complaint reveals no facts from which a logical inference might be drawn that funding issues experienced by the Fund served as a motivating factor in its denial of Plaintiff's pension benefit claims.  Plaintiff's assertion, therefore, amounts to little more than mere speculation which cannot itself serve as a sound basis for countenancing even the limited discovery sought here.  *See McBeth v. Porges*, 171 F. Supp. 3d 216, 236 (S.D.N.Y. 2016) ("[T]he Federal Rules of Civil Procedure do not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions or speculation"); *Surles v. Air France*, No. 00 CIV 5004, 2001 WL 815522, at \*4 (S.D.N.Y. July 19, 2001), *aff'd*, No., 2001 WL 1142231 (S.D.N.Y. Sept. 27, 2001) ("discovery requests [can]not be based on pure speculation or conjecture."); *Tottenham v. Trans World Gaming Corp.*, No. 00 CIV. 7697, 2002 WL 1967023, at \*2 (S.D.N.Y. June 21, 2002) ("Discovery, however, is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support."); *see also 287 Franklin Ave. Residents' Ass'n v. Meisels*, No. 11-CV-976, 2012 WL 1899222, at \*6 (E.D.N.Y. May 24, 2012) ("Discovery is not to be used as 'a hunting license to conjure up a claim that does not exist.'") (quoting *Palumbo v. Shulman*, No. 97 Civ. 4314, 1998 WL 436367 (S.D.N.Y. July 24, 1998)).

Although Plaintiff has attempted to "shore up" its conclusory assertions by attaching funding notices from the 2013 and 2016 Plan Years — in order to illustrate Defendant's purported motivation to deny Plaintiff's claim based upon insufficient funding levels — the Court does not find that these documents, in themselves, create any nexus between funding problems on the one hand and an alleged motivation to deny Plaintiff's pension claim on the other. For example, the April 2013 Notice of Critical Status states in part that the Fund was "in critical status for the 2013 Plan Year (January 1 – December 31, 2013)." Pl.'s Mot., Ex. A. Although the Plan's actuary projected that the Fund would have an "accumulated funding deficiency within four years," this was only a projection. As such, any reference to the Fund's "critical status" set forth in the Notice was itself limited to the Plan Year in which the Notice was disseminated, notwithstanding any such actuarial projections. *See id.* (stating that the Fund was "in critical status for the *2013 Plan Year*") (emphasis added). Similarly, the 2016 Notice of Endangered Status is limited to the 2016 Plan Year and, in any event, reports that the Fund

"previously emerged from critical status" and "is not projected to have an accumulated funding deficiency for the 2016 Plan Year or any of the 9 succeeding Plan Years . . . [and] is not projected to become insolvent for the 2016 Plan Year or any of the 30 succeeding Plan Years . . . ." *Id*.

The administrative determination and appellate review of Plaintiff's pension benefits claim occurred in calendar year 2015. *See* Am. Compl. ¶¶ 28-38. Significantly, neither funding notice provided by Plaintiff contains or otherwise addresses any factual information as to the Plan's overall financial health for Plan Year 2015. As noted, each of the funding notices appears to be limited to the plan year in which it was disseminated. Therefore, any funding issues experienced by the Plan in 2013 or 2016 bear little relationship to any potential issues faced in 2015 — the year Plaintiff's case was adjudicated. This information undermines Plaintiff's theory that the structural conflict compounded by alleged funding woes motivated the Fund to deny Plaintiff's claim. In any event, even assuming that the Fund had been experiencing financial instability during the timeframe within which Plaintiff's claim was decided does not in itself lead to the inexorable conclusion that the Fund was motivated to deny Plaintiff's claim on that basis. Rather, a factual connection is required to bridge this gap. Such facts are simply lacking here.

The law is clear that the mere specter of a conflict, without more, cannot serve as a viable basis to permit discovery beyond the administrative record. *Laakso*, 2011 WL 3360033, at *4 (citing *Baird*, 2010 WL 3743839, at *9 (recognizing that where a plaintiff contends that the plan administrator had a conflict of interest, he or she cannot obtain discovery outside of the administrative record "merely by making conclusory allegations.")). "Instead, the plaintiff must make 'specific factual allegations' to support the discovery request." *Id.* (quoting *Quinones*,

2011 WL 797456 at *2; *see S.M. I*, 2014 WL 1303444, at *4 ("The plaintiff must . . . provide

case-specific allegations tending to show a conflict of interest."). Here, Plaintiff has not done so.

Thus, the Court declines to permit discovery beyond the administrative record on these grounds.

### 3. Whether the Funds' Alleged Failure to Consider Additional Materials Submitted After the Appeals Committee's Decision Warrants Discovery Regarding the Adequacy of the Administrative Record

Plaintiff also seeks "discovery regarding the adequacy of the administrative record."

Pl.'s Mot. at 5. Specifically, Plaintiff asserts that the "Fund's counsel allowed Plaintiff's counsel

to submit letters and documentation after the appeal had been decided, and after consideration of

what Plaintiff submitted, the Fund's counsel decided to maintain the appeal determination." *Id*.

According to Plaintiff, "[t]he Fund now asserts that such communications and documents

submitted after the appeal are not part of the administrative record, even though they were

considered." *Id*. As such, "discovery is needed to determine to what extent the communications

and documentation from Plaintiff were considered by the Fund" as well as "the Fund's practices

or procedures for including such communications and documentation in the administrative

record and for reconsidering or reopening claims." *Id*.

In response, the Fund argues that to the extent Plaintiff supports its position "based solely

on Plaintiff's purported submission of letters and other documentation after the decision by the

Appeals Committee, and the asserted failure of the Fund to include such materials in the

Administrative Record and/or reopen or reconsider the decision by the Appeals Committee based

on such materials," that argument is "contradicted by his own cited authority." Def.'s Opp'n at

4. Specifically, Defendant states that Plaintiff's reliance on this Court's decision in *Feltington v.*

*Hartford Life Insurance Company* is misplaced since, according to Defendant, this Court

determined in *Feltington* that letters submitted by plaintiff to the claims administrator after the

administrator had determined plaintiff's appeal were not part of the administrative record and, as a result, extra-record discovery was unwarranted in terms of testing the adequacy of the administrative record. *Id*. (citing *Feltington*, 2016 WL 1056568, at *12).

Further, Defendant asserts that "[a]s for the discovery sought by Plaintiff relating to the reconsideration or reopening of claims, Defendant agrees to provide information relating to the correspondence between Fund staff and Plaintiff's counsel." Def.'s Opp'n at 5. As such, Defendant has apparently agreed to "provide an affidavit (or declaration under penalty of perjury) from the Fund's Director of Operations (who has over 20 years of experience overseeing the pension appeals process): (1) describing (i) the Fund staff's practices or procedures, which are unwritten, for reopening a closed claim with the Fund office (i.e., at the staff level), and (ii) any practices or procedures of the Appeals Committee for reconsideration, 'settlement' or remand of an appeal that was previously decided by the Appeals Committee; and (2) describing whether and how those practices or procedures have been applied with respect to correspondence between Fund staff and Plaintiff's counsel after the Appeals Committee's decision was made." *Id*.

The Court points out that to the extent Plaintiff may be seeking to expand the administrative record to include the documents submitted by Plaintiff subsequent to the Appeals Committee decision, this specific issue is not properly before the Court and a ruling would be premature at this juncture. *See Feltington*, 2016 WL 1056568, at *12 (recognizing that "[T]he question of whether the administrative record should be expanded to include the Letters is not before this Court, and it would not be proper for this Court to rule on that issue at this time. If Plaintiff seeks to have the Letters included in the record going forward, she must make a proper application for that relief.") (citing *Burgio*, 253 F.R.D. at 229).

Turning to the discovery request itself, Plaintiff's argument for obtaining "discovery regarding the adequacy of the administrative record," Pl.'s Mot. at 5, appears to rest on the conclusion that (1) the Fund permitted Plaintiff to submit additional materials after the Appeals Committee had rendered its decision; (2) the Fund, after considering the additional materials, nevertheless upheld the denial of Plaintiff's pension claim; and (3) notwithstanding the Fund's purported consideration of such post-appeal documents, it asserts that such documents are "not part of the administrative record." *Id*. (citing Am. Compl. ¶¶ 40-47). However, Plaintiff's conclusions are not supported by any specific facts or documentation showing that the Fund permitted Plaintiff to submit post-appeal documents, that such documents would be considered or that any such documents were actually reviewed by the Fund after the appeal had been denied. To the contrary, the Amended Complaint contains only a generalized allegation that following the administrative appeal, Plaintiff's counsel sent additional materials to the Fund after which the Fund "indicated that Plaintiff could still provide evidence that Plaintiff was not an employee of a non-signatory company in the Sheet Metal Industry." Am. Compl. ¶ 44. Indeed, a review of the December 19, 2015 Denial Letter as well as the Summary Plan Description belies Plaintiff's assertion that these additional submissions would have been considered following the denial of Plaintiff's appeal. *See* Def.'s Mot., Ex. A (December 19, 2015 Denial Letter stating, in part, that "the decision of the Appeals Committee is final and binding. No further appeals are available. You may bring an action under Section 502(a) of ERISA to challenge the determination of your appeal."); Ex. B (Sheet Metal Workers' National Pension Fund Summary Plan Description 2014) ("If your written appeal does not explain all of the reasons in support of your claim, or you do not provide all documentation and other information in support of your claim, such reasons,

documentation or information will NOT be considered by the Trustees when they review your appeal (or at any later date).") (emphasis in original).

While it is true that a Court "may permit extra-record discovery to 'test the adequacy of the administrative record' and ensure that it is complete," *Feltington*, 2016 WL 1056568, at *12 (citing *Gill*, 2011 WL 2413411, at *5 and *Liyan He*, 304 F.R.D. at 189), the Court finds no sound basis to permit such discovery where, as here, the premise for seeking such discovery rests entirely on Plaintiff's faulty supposition that the additional submissions should nevertheless have been considered as part of the administrative record in the first instance. *See* Pl.'s Mot. at 5. However, Plaintiff appears to ignore the fact that these additional submissions could not have been part of the administrative record "since they were created after [the Fund] decided Plaintiff's administrative appeal and conducted its review." *Feltington*, 2016 WL 1056568, at *12 (emphasis omitted); *see Novick v. Metro. Life Ins. Co.*, 914 F. Supp. 2d 507, 521 (S.D.N.Y. 2012) (finding that documents submitted after insurer rendered its final determination on plaintiff's administrative appeal were not part of the administrative record and would not be considered by the court); *see also Maskara v. First UNUM Life Ins. Co.*, No. 03 Civ. 498, 2004 WL 1562722 (S.D.N.Y. Jul. 13, 2004) ("The [administrative] record is properly viewed as comprising all materials in the case up to the point at which the administrator made its final decision."); *Biomed Pharm., Inc.*, 831 F. Supp. 2d at 658 n. 10 (same); Def.'s Mot., Ex. A (December 19, 2015 Denial Letter stating, in part, that "the decision of the Appeals Committee is final and binding. No further appeals are available. You may bring an action under Section 502(a) of ERISA to challenge the determination of your appeals.").

Although Plaintiff appears to intimate that the decision by the Appeals Committee did not constitute the final determination of Plaintiff's benefits claims, *see* Pl.'s Mot. at 3, 5; Am. Comp.

¶¶ 40-47, such a position cannot be reconciled with the language contained in the December 19, 2015 Denial Letter or the language contained in the Summary Plan Description. Importantly, Plaintiff has not provided the Court with either contrary procedural language as contained in an official plan document or other correspondence which could provide a factual basis for this position, nor has he asserted such a position with any factual specificity in the Amended Complaint. Thus, at this stage, the Court is constrained to conclude that these subsequent submissions were not part of the administrative record in the first instance. Therefore, Plaintiff is not entitled to extra-record discovery in order to probe the adequacy of the administrative record itself (which would not presently include these submissions). *See Feltington*, 2016 WL 1056568, at *12 ("[T]he Court does not see the utility of permitting Plaintiff to question a Hartford representative about why the Letters were not included in the administrative record . . . these documents were not part of that record since they were created ***after*** Hartford decided Plaintiff's administrative appeal and concluded its review.") (emphasis in original). As such, the Court declines to permit extra-record discovery on this basis.

With regard to Plaintiff's request for discovery concerning the Fund's reconsideration or reopening of claims that have been closed following an administrative appeal, it appears that Defendant has agreed to provide Plaintiff with this information. *See* Def.'s Opp'n at 5 ("As for the discovery sought by Plaintiff relating to the reconsideration or reopening of claims, Defendant agrees to provide information relating to the correspondence between Fund staff and Plaintiff's counsel. . . ."). In light of Defendant's agreement to provide this information, the Court deems this portion of Plaintiff's motion moot.

**IV.**   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff's motion for extra-record discovery is DENIED.

This matter is set down for a Status Conference on September 6, 2017 at 11 AM to discuss the

completion of the pre-trial phase of this case.

**SO ORDERED.**

Dated: Central Islip, New York
       August 4, 2017

                                        <u>/s/ A. Kathleen Tomlinson</u>
                                        A. KATHLEEN TOMLINSON
                                        U.S. Magistrate Judge